UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**F I L E D**

NOV 2 7 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-214-GWU

DONNIE C. SMITH,                                                    PLAINTIFF,

VS.                                 **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that the claimant had carpal tunnel syndrome, a dysthymic disorder, and an anxiety disorder, which were all conditions associated with "severe" functional impairment. (Tr. 18). Smith was believed to be restricted to a limited range of medium level work and was unable to perform past work, but was found capable of performing a significant number of alternative jobs as identified by a vocational expert. (Tr. 21-23).

The plaintiff alleged that he became disabled in October, 2000 (Tr. 45) and listed, among other sources of disability, physical complaints related to bilateral carpal tunnel and hearing loss (Tr. 62, 82). Not much objective evidence was forthcoming about his hearing difficulties, but there was evidence concerning his bilateral carpal tunnel syndrome.

The plaintiff complained to the staff of the Heartland Medical Center of hand and wrist pain after changing to a new job involving "a lot of lifting" in October, 2000. (Tr. 119). Moderate tenderness without swelling or redness was noted, and the patient was referred to a specialist. (Tr. 118).

7

Dr. John Ambrosia saw the plaintiff in January, 2001 and diagnosed severe bilateral carpal tunnel, based on testing performed at a Dr. Thomas' office;[1] his own physical examination confirmed bilateral positive Tinel's sign. (Tr. 123). He recommended carpal tunnel release surgery, but the patient's insurance company did not immediately allow it. (Tr. 122-123).

Meanwhile, in October, 2001, the plaintiff was seen for an independent medical examination by Dr. James Templin, albeit the doctor did not separately record his physical findings for that time in his report subsequently submitted. (Tr. 184).

Worker's Compensation insurance clearance was finally obtained, and on January 2, 2002 his right carpal tunnel release surgery was performed by Dr. Ambrosia. (Tr. 122). After this first surgery, the doctor opined that he could resume full activities without restriction on his right hand, but would be a "one armed individual" until he underwent and recovered from his second surgery. (Tr. 121).

Afterwards, Smith began being seen by Ronald Burgess. Burgess noted that he had not had his carpal tunnel surgery performed on the other hand performed as yet. (Tr. 137).      A left carpal tunnel release was done in April, 2002 by Dr. Burgess. (Tr. 125).

---

[1]Dr. Thomas' office apparently failed to find its records of the patient. (Tr. 116).

8

By May, although the plaintiff complained of some subjective numbness, Burgess opined that he was not manifesting neurological symptoms on the left and only intermittent and non-limiting symptoms on the right; he was released for "regular duty." (Tr. 136). However, Smith was seen again in October complaining of numbness of the right hand; the doctor determined that the range of motion of all digits was full, but felt that EMG/NCV studies should be reordered in view of the continued complaints. (Id.). Nonetheless, the patient apparently did not return to the doctor for more than a year. (Tr. 135).

While he did not immediately return to his surgeon, Smith apparently returned to Dr. Templin for a reevaluation in late 2002 at the request of his attorney. Based on the new examination results as well as the old, pre-surgical EMGs, the doctor opined that the plaintiff should avoid engaging in activities requiring repetitive use of the hands for grasping, holding, pushing, lifting, twisting, turning or the use of any vibratory hand tools. (Tr. 188).

The plaintiff did return to Burgess in March, 2004 and complained of intermittent numbness in his right hand. (Tr. 135). The next month, an electrophysiologic evaluation was performed by Robert Sellin at the request of the doctor. The findings were said to have been improved over previous studies (Tr. 129-130), with only borderline or mild pathology of the median sensory nerves, and median motor findings normal (Tr. 129). Specifically, Dr. Burgess concluded, upon

9

Smith

seeing the test results, that he saw no reason to change his opinion that the plaintiff could return to regular duty. (Tr. 135).

Having reviewed the record as a whole, it appears that while the plaintiff has established that he suffered from greater restrictions than were considered by the ALJ regarding his carpal tunnel (Tr. 236) for the period prior to his recovery from his second surgery, the ALJ's determination is supported by substantial evidence for the period beginning in May, 2002, when a treating source released him for regular duty. Dr. Ambrosia felt that he would be a "one-armed individual" until the second carpal tunnel surgery was performed. Dr. Burgess, the second surgeon, did not release him for any work until May, 2002. While Dr. Templin may have suggested an even greater period of disability, the treating sources were worthy of binding weight.

Thus, the case will be affirmed as to the determination on the plaintiff's condition as of May, 2002 and afterward, but will be remanded for further consideration of the plaintiff's status prior to that date. [2]

This the _27_ day of November, 2006.

*G. Wix Unthank*

G. WIX UNTHANK
SENIOR JUDGE

---

[2]Since the plaintiff can not obtain SSI benefits prior to the application filing date, this portion of the administrative decision will, of course be affirmed.

10